UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 12-23829-CIV-COHN/SELTZER

TOM HUBBERT, et al.,

    Plaintiffs,

v.

CARNIVAL CORPORATION,

    Defendant.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**THIS CAUSE** is before the Court upon Defendant's Motion for Summary Judgment [DE 141] ("Motion"). The Court has carefully considered the Motion, Plaintiff's Response [DE 161] ("Response")[1], Defendant's Reply [DE 164] ("Reply"), all of the parties' submissions, and is otherwise fully advised in the premises.

I.  BACKGROUND

Plaintiffs Tom Hubbert, Linda Hubbert, Billy Ray Kidwell, Tana Kidwell, and Hannah Kidwell[2] (collectively "Plaintiffs") commenced this action against Defendant Carnival Corporation ("Defendant") on October 19, 2012. Compl. [DE 1]. Plaintiffs filed

---

[1] Plaintiffs' Response was not received by the Court until July 26, 2013, over a week after the deadline of July 19, 2013. See DE 150, 161. In its Reply, Defendant urges the Court to disregard the Response because it was filed after this deadline. Plaintiffs have filed a Motion for Enlargement of Time and/or Late Filing Due to Excusable Neglect. See DE 166. Although the Court agrees with Defendant that Plaintiffs failed to ensure that the Court received their Response by the deadline, the Court has nonetheless considered the Response.

[2] The claims of minor plaintiff Hannah Kidwell were dismissed without prejudice on January 29, 2013, because she failed to obtain counsel. See DE 50.

an Amended Complaint on November 19, 2012.[3]  Am. Compl. [DE 5].  In the Amended Complaint,[4] Plaintiffs contend that while taking a cruise on the Carnival Legend from October 23, 2011 through October 30, 2011, they were subjected to "filthy, unsafe, conditions" which included contaminated water and food.  Am. Compl. at 18 ¶ 61.  As a result of the unsanitary conditions aboard the Legend, Plaintiffs claim to have suffered from gastrointestinal illness or Norovirus for the duration of the cruise and the two weeks thereafter.  Id. at 18 ¶ 62.  Plaintiffs assert that Defendant was aware that its ship had contaminated potable water, recreational water, dishwashers, and pot washers which posed risks to the Plaintiffs and that these unsanitary conditions were likely to cause them severe illness.  Id. at 19 ¶ 66.  As a result of the unsanitary conditions aboard the ship, Plaintiffs bring claims against Defendant relating to passenger ticket fraud (Count 1), vacation warranty fraud (Count 2), Center for Disease Control ("CDC") vessel sanitation fraud (Count 3), intentionally causing Plaintiffs' illness for financial gain (Count 4), and theft of Plaintiffs' property (Count 5).  In addition to compensatory

---

[3]     Plaintiffs filed a Second Amended Complaint on December 17, 2012.  See DE 6.  On December 27, 2012, the Court struck the Second Amended Complaint for failure to comply with Federal Rule of Civil Procedure 15.  See DE 11.  In their Response, Plaintiffs insist that the Second Amended Complaint was properly filed under Rule 15. Although the Court respectfully disagrees with Plaintiffs' unique interpretation of Rule 15, the Court notes that Plaintiffs never sought to file the Second Amended Complaint in compliance with Rule 15(a)(2).  Thus, the Court will not consider Plaintiffs' arguments that the Second Amended Complaint was properly filed.

[4]     The Court agrees with Defendant that Plaintiffs Tom Hubbert and Linda Hubbert failed to sign the Amended Complaint in violation of Federal Rule of Civil Procedure 11.  See Motion at 11-12.  Given that this is something the Court would have allowed Plaintiffs to amend had it issued a ruling on Defendant's Motion to Dismiss the Amended Complaint, the Court declines to find that this is a basis for summary judgment.

damages, Plaintiffs request punitive damages.  Defendant has now moved for summary judgment.  Plaintiffs oppose the Motion.

## II.  DISCUSSION

### A. Legal Standard.

The Court may grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must demonstrate a lack of evidence supporting the nonmoving party's case.  Id. at 325.

After the movant has met its burden under Rule 56(c), the burden of production shifts to the nonmoving party who "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The non-moving party "may not rely merely on allegations or denials in its own pleading," but instead must come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 587.

As long as the non-moving party has had an ample opportunity to conduct discovery, it must come forward with affirmative evidence to support its claim. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough

3

of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted).

### B. Plaintiffs Have Failed to Produce Any Evidence Which Demonstrates A Disputed Issue of Material Fact on Their Claim That Defendant Caused Them to Suffer Gastrointestinal Illnesses.

Defendant first argues that it is entitled to summary judgment because Plaintiffs have failed to produce any evidence to support their claim that Carnival caused their gastrointestinal illnesses. Motion at 8. Specifically, Defendant contends that Plaintiffs "have provided no evidence whatsoever to verify their claim that their alleged illnesses even occurred let alone proof that any alleged illness was caused by Carnival." Id. Defendant argues that Plaintiffs must provide expert medical testimony to establish that its actions caused Plaintiffs' illnesses. Id. at 8-9. In opposition, Plaintiffs rely on certain CDC inspection reports which they contend establish that Defendant knew the conditions aboard the Legend were unsanitary. Response at 17-32.

The Court agrees with Defendant that Plaintiffs have failed to provide the Court with any evidence, other than their own conclusory assertions, that they actually suffered any gastrointestinal illnesses. "To defeat a motion for summary judgment, the nonmoving party may not rely on 'mere allegations.' It must raise 'significant probative evidence' that would be sufficient for a jury to find for that party." LaChance v. Duffy's Draft House, Inc., 146 F.3d 832, 835 (11th Cir. 1998) (footnotes omitted). Plaintiffs' Response is devoid of any evidence which establishes that any of the Plaintiffs ever

4

suffered from any gastrointestinal illness. This failure alone merits granting Defendant's Motion on this claim. Even if Plaintiffs did suffer gastrointestinal illnesses during their cruise, however, to defeat Defendant's Motion, they must offer competent evidence that the actions or inaction of the Defendant caused their injuries. See Petitt v. Celebrity Cruises, Inc., 153 F. Supp. 2d 240, 253 (S.D.N.Y. 2001) (granting defendant cruise lines motion for summary judgment on plaintiffs' claim that cruise line negligently caused their upper respiratory tract infections because plaintiffs failed to establish that cruise line's alleged misconduct was the proximate cause of there illnesses).

Here, the only evidence Plaintiffs have produced which in any way relates to their claim are CDC reports which do not directly correlate to the dates of Plaintiffs' cruise. For example, Plaintiffs rely on an October 9, 2011 CDC inspection report where the CDC noted that on August 28, 2011, a potable water sample was positive for coliforms and that there was no documented result for an E. Coli test. October 9, 2011 CDC Inspection Detail Report, Exhibit 3 to Plaintiffs' Response [DE 161] at 36 ("October 9, 2011 CDC Report"). Plaintiffs did not board the Legend until October 23, 2011, two weeks after the inspection and nearly eight weeks after the positive coliforms test.[5] As Defendant points out, the violation was not for a failed E. Coli test, but for failing to document the result of E. Coli testing. See Motion at 10. Thus, the October 9, 2011 CDC Report simply does not support Plaintiffs' claim that the potable water was contaminated during their cruise.

---

[5] Plaintiffs' falsely claim that the positive coliforms test was on October 9, 2011. See Response at 24. Instead, the October 9, 2011 CDC Report references a positive coliforms test from August 28, 2011. October 9, 2011 CDC Report. Thus, this positive coliforms test was not two weeks before the Plaintiffs' cruise.

Indeed, Defendant has produced potable water test results for dates closer in time to Plaintiffs' cruise which were negative for both E. Coli and coliforms.  On October 16, 2011, one week before Plaintiffs' cruise, potable water aboard the Legend tested negative for both E. Coli and coliforms.  October 16, 2011 Onboard Potable Water Quality Report, Exhibit D to Defendant's Motion [DE 141-4]; Declaration of Mario Hrsak, Exhibit C to Defendant's Motion [DE 141-3] ("Hrsak Decl.")[6] ¶ 7.  Additionally, potable water testing on October 23, 2011–the day Plaintiffs' cruise began–was also negative for both coliforms and E. Coli.  October 23, 2011 Onboard Potable Water Quality Report, Exhibit E to Defendant's Motion [DE 141-5]; Hrsak Decl. ¶ 8.  Finally, on October 31, 2011, the day after Plaintiffs' cruise ended, potable water testing aboard the Legend was negative for both coliforms and E. Coli.  October 31, 2011 Onboard Potable Water Quality Report, Exhibit F to Defendant's Motion [DE 141-6]; Hrsak Decl. ¶ 9.  These reports refute Plaintiffs' allegations that the potable water on board the Legend was unsanitary during Plaintiffs' cruise.[7]

As Defendant points out, Plaintiffs' reliance on other aspects of CDC inspection reports also fails to establish that conditions aboard the ship during their cruise were

---

[6] Plaintiffs allege, without any factual support, that the Declaration of Mario Hrsak is perjured and that the exhibits referenced therein are fraudulent.  See Response at 17-18.  The Court does not credit these unsubstantiated allegations.

[7] Plaintiff's Exhibit 4, the October 9, 2011 CDC Inspection Report Corrective Action and Follow Up Log [DE 161] at 42, indicates that after the CDC noted that the E. Coli test was not recorded on August 28, 2011, a meeting was held with all engineers where the procedure for recording E. Coli testing was explained.  Thus, this issue was corrected.

unsanitary and caused them to suffer gastrointestinal illnesses. See Motion at 10-11.[8] For example, Plaintiffs rely on a CDC inspection report dated May 8, 2011, that indicated two potable water tanks were painted in rusty areas on March 19, 2011, to establish that the potable water tanks aboard the Legend were "rusty and filthy" during Plaintiffs' cruise in October. See Response at 22; May 8, 2011 CDC Inspection Report, Exhibit 5 to Plaintiffs' Response [DE 161] at 47. Plaintiff Billy Ray Kidwell, a self-appointed epoxy coating system expert,[9] conclusorily alleges that the two-part epoxy coating system was improperly applied. Response at 23. Separate and apart from the conclusory nature of these allegations, alleged sanitary violations aboard the Legend from May 8, 2011, or earlier simply do not establish that the potable water during Plaintiffs' cruise in late October 2011, was unsanitary and caused them to suffer gastrointestinal illnesses. Coupled with the negative coliforms and E. Coli potable water testing from the time

---

[8] The Motion addresses additional unsanitary conditions alleged in the Amended Complaint. Because Plaintiffs failed to raise these issues in their Response or provide any competent evidence to support these allegations, the Court does not address them here.

[9] While the Federal Rules of Evidence allow a witness who is qualified as an expert by knowledge, skills, experience, training, or education to testify, it goes without saying that the Court need not take Billy Ray Kidwell's word that he is an epoxy coating system expert. See Fed. R. Evid. 702. "Determining whether a witness is qualified to testify as an expert requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony. In other words, a district court must consider whether an expert is qualified to testify competently regarding the matters he intends to address." Clena Invs., Inc. v. XL Specialty Ins. Co., 280 F.R.D. 653, 661 (S.D. Fla. 2012) (quotations omitted). Plaintiffs, in addition to failing to disclose any expert witnesses in this case, have failed to provide any basis for the Court to conclude that Mr. Kidwell has any expertise in epoxy coating systems. Thus, the Court will not consider his opinions regarding whether the epoxy coating was properly applied.

7

around Plaintiffs' cruise, the record before the Court refutes Plaintiffs' mere allegations that the potable water aboard the Legend was unsafe during their cruise.

Plaintiffs' reliance on the October 9, 2011 CDC Report to support that the recreational water facilities aboard the Legend posed an imminent health hazard is also misplaced.  See Response at 29.  The October 9, 2011 CDC Report merely states that Defendant failed to document the pH levels for swimming pools and that facilities should be closed if halogen and pH ranges were not maintained.  October 9, 2011 CDC Report. Thus, contrary to Plaintiffs' assertion, this report does not mandate that the Legend's recreational water facilities be immediately closed.  See Response at 29.  The October 9, 2011 CDC Report also requires installation of chart recorders and electronic data loggers to record pH and halogen measurements.  See October 9, 2011 CDC Report. However, the mere fact that chart recorders and electronic data loggers were not installed as of October 9, 2011, does not establish that the recreational water facilities posed a threat to public health or caused the Plaintiffs to suffer gastrointestinal illnesses. Because the record is devoid of any evidence that Defendant caused Plaintiffs' alleged illnesses, Defendant is entitled to summary judgment.  See Petitt, 153 F. Supp. 2d at 259-60.

### C.  Defendant is Entitled to Summary Judgment on Plaintiffs' Fraud Claims Because Plaintiffs Have Failed to Produce Any Evidence of the Alleged Fraudulent Schemes.

Defendant also moves for summary judgment on each of Plaintiffs' fraud claims because Plaintiffs have failed to produce any evidence to support these claims.  Motion at 13-15.  First, Defendant argues that Plaintiffs' passenger ticket contract fraud claim

8

fails because it is merely a restatement of their negligence claim.  Id. at 13.  Second, Defendant argues that this claim fails because Plaintiffs have failed to prove any actual fraud related to the ticket contract.  Id.  Regarding Plaintiffs' claim that Defendant committed fraud related to its vacation warranty, Defendant argues that Plaintiffs themselves did not abide by the terms of the vacation warranty.  Id. at 14.  For example, Plaintiffs did not advise the ship's information desk that they intended to debark at the first, non-U.S. port of call.  Id.  Instead, the Plaintiffs remained aboard for the duration of their cruise.  Id.  Further, the ticket contract explicitly provides that the itinerary might change due to the weather and Defendant had no obligation under the vacation warranty, or maritime law, to warn Plaintiffs regarding the weather.  Id. at 14-15.  Finally, Defendant contends that Plaintiffs' claim for CDC vessel sanitation program fraud fails because this claim is a restatement of Plaintiffs' negligence claim.  Id. at 15.  Further, Defendant notes the complete lack of evidence of any conspiracy between Defendant and the CDC.  Id.  Thus, Defendant argues that it is also entitled to summary judgment on this fraud claim.

As Defendant points out in its Reply, Plaintiffs' Response fails to address their fraud claims on the merits.  See Reply at 3.  For this reason alone, summary judgment is proper because Plaintiffs have abandoned these claims.  See e.g., Wilkerson v. Grinnell Corp., 270 F.3d 1314, 1322 (11th Cir. 2001) (affirming summary judgment on claim raised in complaint but not addressed in initial response in opposition to summary judgment); Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 182 F.3d 888, 892 (11th Cir. 1999) ("[A]ssertions made in the pleadings ... but not made in opposition to summary judgment need not be considered by the district court or the appellate court in ruling on

the motion for summary judgment."); Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11 th Cir. 1995) ("In opposing a motion for summary judgment, 'a party may not rely on his pleadings to avoid summary judgment against him.' There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."). Even if Plaintiffs had not abandoned their fraud claims, Defendant would still be entitled to summary judgment because Plaintiffs have failed to produce any evidence which supports these claims. As stated earlier, Plaintiffs are not entitled to rely upon the unsubstantiated allegations of their Amended Complaint to defeat summary judgment. Plaintiffs, through their decision not to participate in discovery in this matter, despite numerous Court orders granting motions to compel, have failed to develop evidence to support their fraud claims. Accordingly, summary judgment is appropriate for Defendant.

### D. Defendant is Entitled to Summary Judgment on Plaintiffs' Claim for Stolen Property.

Finally, Defendant moves for summary judgment on Plaintiffs' claim that Defendant stole their property. Motion at 16-18. According to Defendant, Plaintiffs Tana Kidwell and Billy Ray Kidwell's claim regarding $1,300 to $1,400 of stolen merchandise is barred by the express language of the passenger ticket contract. Id. at 16. The passenger ticket contract limits Carnival's liability to only $100 per state room. Id. Additionally, the ticket contract provides that Defendant is not liable for theft claims unless legal proceedings are commenced within six months after the date the guest

landed from the cruise.  Id.  Because Plaintiffs did not commence this action until October 19, 2012, well after the six month statute of limitations provided under the ticket contract had expired, Defendant contends that it is entitled to summary judgment on this claim.  Id.

The Court agrees.  Plaintiffs' Response fails to address their claim for stolen property.  See Reply at 3.  Thus, summary judgment is appropriate for Defendant because Plaintiffs have abandoned this claim.  Summary judgment is also appropriate for Defendant because Plaintiffs have failed to produce any evidence regarding the merchandise which was allegedly stolen from them.  Additionally, because the six month statute of limitations provided in the ticket contract had expired prior to the commencement of this action, Plaintiffs' claim is time barred.

### III.  CONCLUSION

Based on the foregoing, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment [DE 141]  is **GRANTED**.  The Court will enter a separate final judgment.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 9th day of September, 2013.

JAMES I. COHN
United States District Judge

Copies provided to counsel of record and pro se parties via CM/ECF.